

**FILED**

Sep 11 2015, 8:53 am

**CLERK**
of the supreme court,
court of appeals and
tax court

| | |
|---|---|
| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEES |
| Michael J. Andreoli<br>Zionsville, Indiana | Robert Clutter<br>Sergey Grechukhin<br>Kirtley, Taylor, Sims, Chadd & Minnette, P.C.<br>Lebanon, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Robert Blackford,<br>*Appellant-Defendant,*<br><br>v.<br><br>Boone County Area Plan Commission and Boone County Drainage Board,<br>*Appellees-Plaintiffs.* | September 11, 2015<br><br>Court of Appeals Case No.<br>06A01-1410-MI-437<br><br>Appeal from the Boone Superior Court<br><br>Lower Court Cause No.<br>06D02-1405-MI-43<br><br>The Honorable Rebecca McClure, Judge |

**Pyle, Judge.**

## Statement of the Case

[1] Appellant-Defendant, Robert Blackford ("Blackford"), who is a former prosecutor and represented himself pro se, appeals the trial court's denial of his oral request for a continuance made on the day of trial. The trial court denied

Blackford's request, held the bench trial, and entered judgment in favor of Appellees-Plaintiffs, Boone County Area Plan Commission ("the Plan Commission") and Boone County Drainage Board ("the Drainage Board") (collectively, "Boone County"). Blackford argues that the trial court abused its discretion by denying his continuance request. Given Blackford's failure to show good cause or prejudice, we conclude that the trial court did not abuse its discretion.

We affirm.

## Issue

Whether the trial court abused its discretion by denying Blackford's oral request for a continuance made on the day of trial.

## Facts

On May 1, 2014, the Plan Commission filed a complaint against Blackford and his estranged wife, Susan Blackford ("Susan").[1] In its complaint, the Plan Commission alleged, in part, that:

> 4. Defendants are the owners of real estate located in Boone County, County Parcel Number 008-00210-01 and an address of 3401 East 750 South (est.), Boone County, Indiana ("the Property"). The Property is located within Boone County but outside an incorporated town or city.

---

[1] Susan was named as a defendant below, but she neither responded to the complaint nor appeared at trial. The trial court entered default judgment against her. Because Susan was a party below, she is a nominal party in this appeal. *See* Ind. Appellate Rule 17(A). For simplicity, when referring to the claims alleged against Blackford and Susan, we will refer to them collectively as "Blackford" or "Defendants."

5.  The unincorporated areas of Boone County are governed by and subject to the Zoning Ordinance of Boone County ("the Zoning Ordinance") . . . .

6.  The Property is designated as General Agricultural ("AG"), as that term is defined in the Zoning Ordinance.

7. The Zoning Ordinance provides that "Open Material Storage" is permitted only on real estate with a zoning designation[] of I-2 (General Industry), or by Special Exception on real estate with a zoning designation of I-1 (light Industry).  Open Material Storage use is not permitted in the AG designated areas.

8. A "Construction/Demolition Site," as that term is defined in the Zoning Ordinance, is permitted only by Special Exception by the Boone County Board of Zoning Appeals ("BZA") in the areas designated with an I-1 zoning, I-2 zoning, or AG zoning. Defendants did not apply for a special exception with the BZA.

9.  I.C. [§] 36-7-4-1014 provides that Plaintiff may bring an action in a court of competent jurisdiction to enforce the Zoning Ordinance.

10.  On or about December 19, 2013, Defendants' Property was inspected and found to contain a significant amount of dirt, concrete, debris, and an unpermitted construction trailer.  It was determined that the accumulation of dirt, concrete, and debris has negatively affected drainage, and presented a high potential for off-site erosion and sedimentation *in violation of the Boone County Drainage Ordinance*.  Defendants did not obtain a permit for the temporary construction trailer or a Drainage Permit in violation of the Zoning Ordinance.

11.  On or about March 17, 2014[,] a Notice to Stop Work Order ("Order") was placed on the Property.  Defendants did not comply with the Notice.

12.  On or about April 29, 2014, Defendants' Property was inspected and found to contain piles of dirt, concrete, rebar, construction equipment, and an unpermitted construction trailer, and a second Order was posted on the Property.

13.  Defendants, or their agents, have intentionally removed and destroyed two (2) Stop Work Orders posted on the Property by Plaintiff, and continue to conduct activities at the site in contravention of those Orders and the Zoning Ordinance.

14.  Defendants have been notified of the non-conforming uses of the Property by letters sent by U.S. Mail and Certified Mail, and have refused or failed to remedy the non-conforming uses of the Property.

15.  Defendants' uses of the Property . . . are in violation of the Zoning Ordinance, *Drainage Ordinance*, and is a common nuisance.

(App. 21-23) (emphases added).  The Plan Commission sought a permanent injunction to "permanently enjoin Defendants from utilizing the Property as a construction/demolition site or an open material storage for storing dirt, concrete, rebar, debris, industrial or construction waste and other materials." (App. 24).  Additionally, the Plan Commission sought, subject to provisions of the Zoning Ordinance, "civil penalties of not more than Three Hundred Dollars ($300.00) per day" as well as attorney fees and costs.  (App. 24).

[4]  On May 22, 2014, Blackford, a former prosecutor, filed a pro se answer to the complaint.  In his answer, Blackford denied that he was using the Property for Open Material Storage or as a Construction/Demolition Site.  In regard to the allegations contained in paragraph 10 of the Plan Commission's complaint, Blackford answered, in part, as follows:

OH MY GOD!!!! Rachel Cardis [the Plan Commission's Executive Director] found a significant amount of dirt on my farm!  I admit it.  There is a large amount of dirt on my property. I find no authority whatsoever enabling any Boone County official to regulate dirt on my farm, either the bringing in of the

dirt, or the moving of dirt around on the property itself . . . After studying the zoning ordinance, I believe my impression is correct—there are no prohibitions to what I am doing . . . [T]he Complaint turns Bill Clintonish: "Mistakes were made"!! Mistakes don't make themselves, and the phrase "It was determined" in paragraph 10 suffers the same ambiguity: Who made the determination that drainage has been negatively affected? What kind of qualifications does that person possess? Against what standard was the present condition compared in order to make such a determination? This allegation is void for vagueness. I had the property examined and surveyed by Hause Surveying and Engineering, and the surveyors and engineers determined that, in fact, *there has been no impact whatsoever to the drainage at the property*. All of the neighboring properties drained onto my farm. All the neighboring properties continue to drain onto my farm. *There is no drainage from my farm to any neighboring property.* I have no intention of altering that fact. Neither is there any off site erosion. *I do not believe I need a drainage permit . . . .*

(Appellee's App. 5-7) (emphases added). Blackford also asserted that any Stop Work Order was "void for lack of authority" because his activity on his property was "simply not prohibited by the zoning ordinance." (Appellee's App. 8). He also acknowledged that he had received correspondence from the Plan Commission but admitted that he had "ignored" it. (Appellee's App. 9). Blackford did not raise any specific affirmative defenses in his answer.

[5] Along with Blackford's answer, he also filed a counterclaim, alleging that the Plan Commission had committed perjury in its complaint. Blackford alleged, in part, that:

Paragraph #10 [of the Plan Commission's complaint] is simply untrue on its face. It is unlikely anyone with a level of intelligence above that of [a] moron could conclude my activities

on my property have affected drainage.  I have had my property surveyed by Hause Surveying and Engineering.  They report I am having no effect on drainage.

(Appellee's App. 11).  As part of his counterclaim, Blackford also asserted, "I am a former prosecutor."  (Appellee's App. 12).

[6]   On May 30, 2014, the trial court held a pretrial conference, during which it set a bench trial for July 30, 2014.  During that hearing, the trial court asked Blackford if he was going to hire counsel, and he indicated that he was not.  That same day, Blackford filed a motion to dismiss, and the Plan Commission filed a response in opposition to Blackford's motion shortly thereafter.[2]  On June 16, 2014, the trial court denied Blackford's motion to dismiss.

[7]   On July 3, 2014, the Plan Commission filed a motion to amend its complaint, in which it requested "to include the [Drainage] Board as another Plaintiff." (App. 26).  In its motion, the Plan Commission stated that the Drainage Board was "an interested and an indispensable party" because the "original Complaint allege[d] violations of the Stormwater Management Ordinance of Boone County[.]" (App. 26).  The Plan Commission stated that "the Amended Complaint ha[d] no substantive changes[,]" and it attached a copy of the amended complaint to its motion.  (App. 26).

---

[2] Blackford did not include a copy of his motion to dismiss or the Plan Commission's opposition motion in his Appellant's Appendix; nor did Boone County include a copy of these pleadings in their Appellees' Appendix.

In its proposed amended complaint, the Plan Commission alleged that the Drainage Board was "charged with exercising the enforcement of drainage and stormwater management regulations" and could "bring civil actions in its own name to enforce any provisions of the chapter" of the ordinance. (App. 28). In regard to the violation of the drainage ordinance, the Plan Commission also alleged that

> stormwater drainage improvements related to development of lands, and erosion and sediment control systems installed during new construction and grading of lots and other parcels of land located with[in] Bo[o]ne County are regulated by and subject to the Stormwater Management Ordinance of Boone County (the "Drainage Ordinance") as adopted by the Commissioners of Boone County on April 21, 1997, and most recently amended on December 1, 2008.

(App. 29). As in its complaint, the Plan Commission alleged in the amended complaint that "Defendants' uses of the Property . . . [were] in violation of the Zoning Ordinance, Drainage Ordinance, and [were] a common nuisance." (App. 31). The Plan Commission again sought a permanent injunction to "permanently enjoin Defendants from utilizing the Property as a construction/demolition site or an open material storage for storing dirt, concrete, rebar, debris, industrial or construction waste and other materials." (App. 31). Additionally, the Plan Commission's proposed amended complaint requested fines, pursuant to both the Zoning Ordinance and the Drainage Ordinance, for violations of these ordinances. Specifically, it sought: (1) under the provisions of the Zoning Ordinance, "civil penalties of not more than Three Hundred Dollars ($300.00) per day[;]" and (2) under the provisions of the

Drainage Ordinance, "civil penalties of not more than Five Thousand Dollars ($5000.00) per day[.]" (App. 32). It also sought attorney fees and costs.

[9] On July 7, 2014, the trial court instructed Blackford that he had ten days to respond to the Plan Commission's motion to amend the complaint. Fourteen days later, on July 21, 2014, Blackford filed a pro se Opposition to Plaintiff's Motion to Amend Complaint ("opposition response"). In his opposition response, Blackford generally stated that he opposed the Plan Commission's motion to amend, but he did not assert any specific objection to the addition of the Drainage Board. Blackford asserted, in part, that:

> The proposed amended Complaint, just as the original Complaint, contains no information which could in any way enable defendants to defend this action . . . Plaintiffs have not identified a single, living person as a plaintiff in order that defendants may undertake discovery. Is the Court going to entertain a Notice of Deposition of Boone County Drainage Board? Who's going to show up? The original Complaint was drafted so poorly that plaintiff's attorney is able to add an entire county board without even having to add to or change the language of the original Complaint. Is it possible that next week plaintiff's attorney will move the court to add the FBI, the CIA, and the Department of Homeland Security to the list of plaintiffs? Who am I dealing with here?
>
> * * * * *
>
> The original Complaint, and it's equally muddy proposed amended Complaint, both fail to state a basis for the court's jurisdiction . . . .
>
> In short, the proposed amended Complaint fails to state a claim for which relief can be granted 12(b)(6), fails to state facts which

could give rise to the court's jurisdiction 12(b)(1), and gives rise to a motion for more definitive statement 12(e).

(App. 34-36). Also on July 21, 2014, the trial court granted the Plan Commission's motion to amend,[3] and Boone County's amended complaint was deemed filed as of that day.[4]

[10] On Wednesday, July 30, 2014, the trial court held a bench trial on Boone County's claims and Blackford's counterclaim. At the beginning of trial, Blackford told the trial court that he had gotten notice the preceding Friday that the trial court had granted the Plan Commission's request to file the amended complaint. He stated that he had not "had an opportunity to research what that d[id] to the landscape" and that he had "sought counsel beginning first thing Monday morning [June 28], because this ha[d] gotten more complicated." (Tr. 7).

[11] The trial court questioned what Blackford needed to research, noting that he had already responded to the Plan Commission's motion to amend and that he "had addressed the issue raised[.]" (Tr. 7). The trial court then discussed the procedural history surrounding the motion to amend, noting that Blackford had filed, in an untimely manner, his opposition response to the motion to amend

---

[3] Blackford did not include a copy of the trial court's order in his Appellant's Appendix; nor did Boone County include a copy of it in their Appellees' Appendix.

[4] Boone County's amended complaint contains a file-stamped date of July 24, 2014, but the chronological case summary ("CCS") indicates that it was "([d]eemed filed on 7-21-14 by signed Order on that date)." (App. 5).

on July 21. The trial court indicated that, when it granted the Plan Commission's motion to amend, the amended complaint attached to the motion was deemed filed on the date of the Plan Commission's request, which was July 3. The trial court further stated that it "assumed" that Blackford's opposition response was an answer to the amended complaint. (Tr. 10). Blackford stated that he thought he had twenty days from the date the trial court granted the motion to amend, which would have been twenty days after July 21. The trial court disagreed and stated that it was "deem[ing]" the [amended] Complaint answered[.]" (Tr. 11).

[12] Blackford then requested a continuance so that he could hire an attorney, stating that that case had gotten "way more complex than it was when it first started" due to the addition of the Drainage Board and that he only became aware of the complexity when he got the order granting the motion to amend. (Tr. 12). Boone County objected, arguing that Blackford had been aware of the drainage issue because it was in the original complaint, he had been in communication with county officials since late 2013 about drainage issues, and he had "every opportunity to hire an attorney[.]" (Tr. 12). The trial court stated that the amended complaint "did not change the nature of the Complaint" and merely "added a necessary party." (Tr. 13). When the trial court asked Blackford how the case had become more complex when the violation of the drainage ordinance was already at issue in the original complaint, he acknowledged that the nature of the complaint had not changed because paragraph ten in the original complaint contained an allegation that he

had violated the drainage ordinance. He contended, however, that the addition of the new party brought "a whole new prospective" to the case because it added a party who was able to enforce the drainage ordinance violation issue. (Tr. 15). Blackford asserted that he had not had the opportunity to review the drainage issue and had "not [been] concerned" with the issue because the Drainage Board was not a party. (Tr. 14). The trial court pointed out that Blackford had done "nothing in response to that original Complaint to preclude that [drainage ordinance violation] argument" and had not asserted that the Plan Commission did not have a necessary party named. (Tr. 15). After Blackford asserted that he had not responded to the drainage ordinance violation allegation in his answer to the original complaint, the trial court stated that Blackford's "Answer filed on May the 22nd of 2014 did address paragraph ten (10)" and the drainage violation issue. (Tr. 17). The trial court further noted that, when the parties "were here the last time in Court" for a pretrial hearing on May 30, 2014, the trial court had advised Blackford that "this was [a] trial . . . not a small claims matter" and told him that he "would have to adhere to the Rules of Evidence[.]" (Tr. 17). The trial court reminded Blackford that during that pretrial hearing, it had asked him about hiring counsel, and he indicated that he did not intend to do so. The trial court determined that, between that pretrial hearing and the bench trial, the nature of the complaint had not changed significantly, and it denied Blackford's oral request to continue the trial.

[13] During the bench trial, Blackford cross-examined Boone County's witnesses regarding the allegations that Blackford had violated the drainage ordinance and the zoning ordinance. He also presented witnesses on his own behalf. At the end of the trial, the trial court took the matter under advisement.

[14] Thereafter, on August 12, 2014, the trial court entered its order, enjoining Blackford "from further work" on his property "pending approval from the Boone County Plan Commission, the Boone County Drainage Board, and the Indiana Department of Environmental Management." (App. 20). The trial court made the following relevant findings and conclusions regarding the procedural history leading up to trial, the denial of Blackford's continuance request, and the claims asserted in Boone County's amended complaint:

> 52. The Boone County Area Plan Commission filed its original Verified Complaint for Injunction and Fine on May 1, 2014. That Complaint contained an allegation that the Defendants' use of their Property constituted violations of both the Zoning Ordinance[] and Drainage Ordinance.
>
> 53. . . . On May 22, 2014, Robert Blackford filed his Answer to Plaintiff's Verified Complaint and Counter-Claim. Included in that Answer was [Blackford's] answer to the paragraph of the Plaintiff's Complaint that alleged violation of both the County [Zoning] Ordinance and the County Drainage Board Ordinance.
>
> 54. Further, in Robert Blackford's Counter-Claim he allege[d] that "It [was] unlikely anyone with a level of intelligence above that of a moron could conclude my activities on my property have affected drainage . . ." thereby addressing the portion of Plaintiff's Complaint alleging a violation of the County Drainage Ordinance.

55. On July 3, 2014, Plaintiff Boone County Area Plan Commission requested leave to amend the Complaint earlier filed to include the Boone County Drainage Board as a necessary party, which motion contained a copy of the proposed Amended Complaint. Plaintiff's Motion requested that the Court issue an order granting Plaintiff leave to file the Amended Complaint, that the Amended Complaint be deemed filed, and for all other just and proper relief.

56. On July 7, 2014, the Court gave the Defendants ten (10) days to respond to Plaintiff's Request to Amend.

57. It was not until July 21, 2014, that Robert Blackford filed his Opposition to Plaintiff's Motion to Amend Complaint. In that response, Robert Blackford stated that the "proposed amended Complaint fails to state a claim for which relief can be granted, fails to state facts which could give rise to the court's jurisdiction, and gives rise to a motion of more definitive statement."

58. The Court did not read [Blackford's] Opposition to oppose addition of a necessary party, but [as] to claim instead that no entity had the right to bring the current action against him.

59. On July 24, 2014, the Plaintiffs marked for filing their earlier proposed Amended Complaint for Injunction and Fine. The Court having earlier so Ordered deemed that Amended Complaint filed as of July 3, 2014.[5]

* * * * *

61. Clearly, Plaintiffs proved violations of both the Boone County Zoning Ordinance and the Boone County Drainage Board Ordinance.

62. Although this Court would not normally impose the maximum allowable fine upon such a finding, the Court finds most egregious, the Defendants' total disregard for the authority of the Boone County Area Plan Commission and Drainage

---

[5] This is in conflict with the CCS as noted in footnote 4.

Board to regulate work on unincorporated land in Boone County and their blatant disregard for the Stop Work Orders issued.

63. Until approximately 1983, Robert Blackford was an attorney by profession.

64. . . . it was made clear to [Defendants] by the Area Plan Commission's letter of March 17, 2014, that they bore total responsibility for violations upon their property and that they would be held financially accountable for any fines imposed. . . .

* * * * *

66. The Court, having found that Robert C. Blackford and Susan J. Blackford violated Boone County Drainage Ordinance as set forth above, and finding the actions of the Defendants in ignoring the three (3) Stop Work Orders issued particularly egregious, the Court hereby assesses a fine of Five Thousand Dollars ($5,000.00) per day from the date of the face-to-face [meeting] between county officials and Robert Blackford on March 24, 2014, through July 30, 2014. The Court sets fine upon these violations over the period of ninety[-]eight days in the sum of Four Hundred Ninety Thousand Dollars ($490,000.00).

67. The Court having also determined that the Defendants violated the Boone County Zoning Ordinance, hereby assess fine upon that finding in the sum of Three Hundred Dollars ($300.00) per day for the period of ninety[-]eight days for a total fine upon those violations of Twenty Nine Thousand Four Hundred Dollars ($29,400.00).

68. The Court, hereby finds for the Plaintiffs and against the Defendants, Robert C. Blackford and Susan J. Blackford, and enters Judgment in favor of the Plaintiffs and against the Defendants, jointly and severally, in the sum of Five Hundred Nineteen Thousand Four Hundred Dollars ($519,400.00), plus Court Costs of One Hundred Fifty Six Dollars ($156.00) and attorney fees in the sum of Eight Thousand Seven Hundred Fifteen Dollars ($8,715.00).

69. The Court further grants the Plaintiffs' prayer for injunctive relief.

(App.18-20).

Thereafter, Blackford, by counsel, filed a motion to correct error, in which he alleged that the trial court had erred by denying his request for a continuance. He argued that the denial of his request did not allow him to hire counsel, precluded him from filing an answer to the amended complaint with "potential" affirmative defenses and additional counterclaims, and was "in violation of his procedural due process rights to a fair hearing." (App. 45). Blackford also alleged that the trial court's denial of his request was erroneous because the trial court had mistakenly concluded that his time to file an answer had elapsed and that the changes to the amended complaint were non-substantive. Blackford asserted that the changes to the amended complaint were, instead, substantive because the original complaint "in no way could have placed [him] upon reasonable Notice as to the nature and extent of the drainage allegations that were ultimately raised by the Amended Complaint." (App. 47). Blackford asked the trial court to grant him a new trial and to allow him to file responsive pleadings to the amended complaint. Boone County filed

a response to Blackford's motion to correct error.[6]  Without holding a hearing, the trial court denied Blackford's motion.  Blackford now appeals.

## Decision

Blackford presents a single issue for our review and contends that the trial court erred by denying his oral request for a continuance.

Before we address this issue, we pause to note that Blackford neither challenges the trial court's conclusion that he had violated the zoning and drainage ordinances nor does he challenge the $519,400.00 judgment entered against him.  While, at first blush, that amount may seem excessive, a review of the record reveals that there is significant evidence of the damage and negative effect on drainage caused by his dumping of dirt in violation of the ordinances and his willful defiance of multiple stop-work orders.  For example, the evidence reveals that in December 2013, county officials inspected Blackford's property, found a significant amount of dirt, and then informed Blackford by letter of the need to comply with the local ordinances.  The record further shows that after meeting on March 24, 2014 with county officials, who told Blackford to cease dumping dirt on his property, he dumped approximately 2,000-3,000 additional truckloads of dirt.  Additionally, a witness who worked at a golf course directly south of Blackford's property testified that, after

---

[6] Boone County's response is not included in either Blackford's Appellant's Appendix or Boone County's Appellee's Appendix.

learning that Blackford had a stop-work order issued against him, he started to count the number of tri-axle dump trucks that off-loaded dirt at Blackford's property and that between June 3 and July 28, 2014, he counted 596 trucks. This witness also testified that Blackford was causing more water than normal to back up onto the golf course after a heavy rain and that dirt from Blackford's property had caused dirt to build up around the drain on his property. A police officer also testified regarding the numerous tri-axle dump trucks he had seen dumping dirt onto Blackford's property. The officer testified that the dumping of dirt on Blackford's property had caused mud to accumulate on the nearby road. He also testified that, after a heavy rain, the water would pool on the road at a depth that could cause people to hydroplane. Finally, we point out that the trial court imposed fines under the ordinances only from the date that Blackford personally met county officials while it could have included dates prior to that.

[18] We now turn to Blackford's challenge to the trial court's denial of his oral request for a continuance. Pursuant to our Indiana Trial Rules, "[u]pon [a] motion" to continue a trial filed by a party, a trial court has "discretion" to "postpone[] or continue[]" the trial. Ind. Trial Rule 53.5. "[A] trial court shall grant a continuance upon motion *and* 'a showing of good cause established by affidavit or other evidence.'" *Gunashekar v. Grose*, 915 N.E.2d 953, 955 (Ind. 2009) (quoting Ind. Trial Rule 53.5) (emphasis added). "A trial court's decision to grant or deny a motion to continue a trial date is reviewed for an abuse of discretion, and there is a strong presumption the trial court properly exercised

its discretion." *Id.* "A denial of a motion for continuance is [considered to be an] abuse of discretion only if the movant demonstrates good cause for granting it." *Id.* "However, no abuse of discretion will be found when the moving party has not demonstrated that he or she was prejudiced by the denial." *Riggin v. Rea Riggin & Sons, Inc.*, 738 N.E.2d 292, 311 (Ind. Ct. App. 2000). "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request was denied." *J.P. v. G. M.*, 14 N.E.3d 786, 790 (Ind. Ct. App. 2014) (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589-590 (1964), *reh'g denied*).

[19] Continuances to allow time for additional preparation are generally disfavored and require a showing of "good cause" and how "it is in the interests of justice." *Williams v. State*, 681 N.E.2d 195, 202 (Ind. 1997). *See also Clodfelder v. Walker*, 125 N.E.2d 799, 800 (Ind. 1955) (explaining that a motion for continuance should be made at the earliest practicable time after knowledge of the necessity for a continuance). Furthermore, "[a] continuance requested for the first time on the morning of trial is not favored." *Lewis v. State*, 512 N.E.2d 1092, 1094 (Ind. 1987).

[20] When arguing that the trial court abused its discretion, Blackford first contends that the trial court's denial of his continuance request, which was based on his assertion that he wanted to hire an attorney, resulted in a violation of his due process rights. Secondly, he contends that the trial court's denial of his

continuance request was erroneous because the trial court found that his opposition response served as his answer to the amended complaint and that his time to file an answer to the amended complaint had passed.

[21] Boone County argues that the trial court did not abuse its discretion by denying Blackford's continuance request because he "did not show, by affidavit or other evidence, a good cause to request the continuance." (Boone County's Br. 17). Boone County also contends that the trial court's ruling was not an abuse of discretion because Blackford knew of the drainage ordinance violation allegations and "had sufficient time to prepare a defense, request a continuance, or hire counsel prior to the trial date." (Boone County's Br. 17).

[22] We agree with Boone County that the trial court's denial of Blackford's continuance request made on the day of trial was not an abuse of discretion and did not violate any potential right to due process, and we find that our Indiana Supreme Court's opinion in *Gunashekar* to be instructive to the resolution of this issue. In that case, the plaintiff filed a complaint, alleging that the defendants had breached a contract and had committed conversion and deception. *Gunashekar*, 915 N.E.2d at 954. The defendants, who were not native English speakers, originally had an attorney, but he filed a motion to withdraw his appearance eight weeks before trial. *Id.* The trial court granted the motion six weeks before the trial, leaving the defendants without an attorney. *Id.* Eleven days before trial, the defendants filed a pro se motion to continue the trial, stating that they wanted to hire new counsel. *Id.* The defendants did not attach an affidavit or present evidence explaining their interim efforts to hire a new

attorney. *Id.* The trial court denied the motion and held the scheduled bench trial. *Id.* The trial court entered judgment against the defendants in the amount of $147,337.04 and an additional $296,520.00 for treble damages and attorney fees. *Id.* at 955.

[23] On appeal, the defendants argued, in part, that the trial court had abused its discretion by denying their motion to continue the trial to hire a new attorney. *Id.* Our Court agreed and reversed the trial court's judgment and remanded for a new trial. *Id.* (citing *Gunashekar v. Grose*, No. 02A03-0712-CV-614, 2008 WL 3311840, slip op. at 2 (Ind. Ct. App. Aug. 12, 2008), *trans. granted*). Our Indiana Supreme Court, however, granted transfer and held that the trial court did not abuse its discretion by denying the defendants' motion to continue the trial. *Id.* 955-56. Our supreme court explained that "the trial court was entitled to consider how long the trial had been scheduled, the lack of explanation for eight weeks of apparent inaction, the relative simplicity of a three-witness bench trial, and the potential that the request was a conscious gaming of the system." *Id.* at 956.

[24] Like in *Gunashekar*, the trial court here did not abuse its discretion by denying Blackford's request to continue the bench trial. Here, Blackford, who had been an attorney and former prosecutor, represented himself throughout the proceeding and filed various pleadings, including an answer, counterclaim, motion to dismiss, and opposition response to the motion to amend. After the trial court had set the case for a bench trial, the Plan Commission filed a motion to amend its complaint on July 3, 2014, seeking to add the Drainage Board as a

plaintiff. The trial court granted the motion on July 21, and Blackford received notice of the order on July 24. Blackford, however, waited until the morning of trial on July 30, 2014, to make an oral request for the trial court to continue the trial, contending that he had just become aware of the drainage ordinance violation issue on July 24 and needed to hire counsel to deal with this new complex issue. However, both the original complaint and the amended complaint contained allegations that Blackford had violated the drainage ordinance. When the trial court asked Blackford how the case had become more complex when the violation of the drainage ordinance was already at issue in the original complaint, he acknowledged that the nature of the complaint had not changed because paragraph ten in the original complaint contained an allegation that he had violated the drainage ordinance. Blackford asserted that he had "sought counsel" on June 28, but he gave no further explanation or details regarding whether he was close to retaining an attorney or whether he needed additional time to do so. (Tr. 7). Before denying Blackford's oral request, the trial court noted that it had, at a May 30 pretrial hearing, asked Blackford about hiring counsel, and he indicated that he had stated that he did not intend to do so.

[25] Blackford's continuance request was done by an oral motion on the day of trial and not by a motion supported by an "affidavit or other evidence" or a "showing of good cause" as required by Trial Rule 53.5. "[A] *pro se* litigant is held to the same established rules of procedure that trained counsel is bound to follow." *Gunashekar*, 915 N.E.2d at 955. Because Blackford did not articulate

any good cause for the continuance or show that he would be prejudiced, and given the deference to the trial court's decision on this matter, we conclude that the trial court did not abuse its discretion by denying Blackford's oral request for a continuance made on the morning of trial. *See, e.g.*, *Gunashekar*, 915 N.E.2d at 956 (affirming the trial court's denial of a motion to continue the bench trial); *Fetner v. Maury Boyd & Assocs., Inc.,* 563 N.E.2d 1334, 1338 (Ind. Ct. App. 1990) (affirming the trial court's denial of the defendant's motion to continue to hire counsel and holding that the denial of the motion to continue did not constitute a violation of due process), *reh'g denied*, *trans. denied*.

[26] We now turn to Blackford's argument that the trial court erred by denying his request to continue the trial so that he could file an answer to the amended complaint. Blackford contends that the trial court erred by treating his opposition response as an answer to the amended complaint. He also contends that the trial court erred by finding that the time to file an answer to the amended complaint had passed, and he asserts that pursuant to Trial Rule 15, he had twenty days from July 21, 2014 to file his answer to the amended complaint.

[27] Here, at the beginning of trial, Blackford told the trial court that the amended complaint had made things "more complicated" and that he needed time to do more research. When Blackford asserted that he should be given more time so that he could file an answer to the amended complaint, the trial court disagreed. The trial court noted that Blackford had already responded to the Plan Commission's motion to amend and that he had addressed the drainage issue.

(Tr. 7). The trial court stated that it "assumed" that Blackford's opposition response was an answer to the amended complaint, and it "deem[ed] the Complaint answered." (Tr. 10, 11). The trial court also stated that Blackford's twenty-day period for filing an answer had already passed because the amended complaint was deemed filed as of July 3, 2014, when the Plan Commission filed the motion to amend.

[28] In regard to Blackford's argument that the trial court erred by treating his opposition response as an answer to the amended complaint, we note that "courts are not bound by a party's characterization of a motion[.]" *YTC Dream Homes, Inc. v. DirectBuy, Inc.*, 18 N.E.3d 635, 642 (Ind. Ct. App. 2014) (quoting *Stephens v. Irvin,* 734 N.E.2d 1133, 1135 n. 1 (Ind. Ct. App. 2000)), *opinion aff'd in relevant part, vacated in part,* 30 N.E.3d 701 (Ind. 2015). A review of Blackford's opposition response reveals that it generally stated that he opposed the Plan Commission's motion to amend, but he did not assert any specific objection to the addition of the Drainage Board. Instead, Blackford addressed some of the allegations, denying that he had personally placed any of the dirt on his property or that he had violated an ordinance. He also asserted affirmative defenses, including lack of jurisdiction and failure to state a claim. Thus, we cannot conclude that the trial court erred in the manner asserted by Blackford.

[29] Turning to Blackford's argument that the trial court erred by finding that the time to file an answer to the amended complaint had passed, we note that Trial Rule 15(A) addresses amendments to pleadings and answers thereto. This rule provides in relevant part:

[A] party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within twenty [20] days after service of the amended pleading, whichever period may be the longer, *unless the court otherwise orders*.

(Emphasis added).

[30] We note that the CCS indicates that the amended complaint was deemed filed as of July 21, when the trial court entered the order granting the Plan Commission's motion. Thus, less than twenty days would have passed from that July 21st date to the July 30th bench trial. Nevertheless, Trial Rule 15(A) provides that this twenty-day period can be altered if "the court otherwise orders."

[31] Moreover, we cannot agree that the twenty-day time limit set forth in Trial Rule 15(A) is controlling on the determination of whether the trial court erred by not allowing Blackford to file an additional pleading in addition to his opposition response, which, as discussed above, the trial court treated as the functional equivalent of an answer. Here, the original complaint contained an allegation that Blackford had violated the drainage ordinance, but that complaint did not list the Drainage Board, the real party in interest to the claim, as a plaintiff. Thereafter, the Plan Commission sought to amend the complaint to add the Drainage Board as a party plaintiff, stating that it was "an interested and an indispensable party to this action." (App. 26).

[32] "Our rules of trial procedure promote the participation of the real party interest in litigation." *Inlow v. Henderson, Daily, Withrow & DeVoe*, 787 N.E.2d 385, 398 (Ind. Ct. App. 2003), *trans. denied*. "A real party in interest . . . is the person who is the true owner of the right sought to be enforced." *Hammes v. Brumley*, 659 N.E.2d 1021, 1030 (Ind. 1995), *reh'g denied*. Indiana Trial Rule 17(A) provides that "[e]very action shall be prosecuted in the name of the real party in interest." This rule further provides that:

> No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time after objection has been allowed for the real party in interest to ratify the action, or to be joined or substituted in the action. Such ratification, joinder, or substitution shall have the same effect as if the action had been commenced initially in the name of the real party in interest.

[33] Trial Rule 17(A). "As evidenced by the clear language in Trial Rule 17, it encourages allowing the real party in interest to be joined or substituted in the action[.]" *Hammes*, 659 N.E.2d at 1030. "Trial Rule 17 also clearly states that the substitution of a real party in interest relates back to the date the initial complaint was filed." *Id.* Because the amended complaint added the Drainage Board as the real party in interest for the drainage ordinance violation issue, pursuant to Trial Rule 17(A), that substitution of the real party in interest related back to the date the initial complaint was filed. Thus, under the specific facts of this case, the trial court did not err when it refused to allow Blackford to file an answer to the amended complaint.

Affirmed.[7]

Crone, J., and Brown, J., concur.

---

[7] At the end of their Appellee Brief, Boone County included a single-sentence request, asking this Court to "award them the reasonable attorney fees under Ind. Appellate Rule 67(C)." (Boone County Br. 26). Appellate Rule 67 applies to "costs," not attorney fees. *See* Ind. App. R. 67(A). This rule further provides that "[u]pon a motion . . . within sixty (60) days *after* the final decision of the Court of Appeals, the Clerk shall tax costs[.]" App. R. 67(A) (emphasis added). These costs include: (1) the filing fee; (2) the cost of preparing the Record on Appeal, including the Transcript and Appendix; and (3) postage expenses for service of documents with the Clerk. App. R. 67(B). Because Appellate Rule 67 pertains to costs, which must be set out by a party entitled to costs and requested after a final decision, we decline Boone County's request at this time.