# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 20 2018, 9:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Aaron E. Haith
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Howard Robinson, *Appellant-Respondent,* | April 20, 2018 |
| v. | Court of Appeals Case No. 49A02-1709-DR-2119 |
| | Appeal from the Marion Superior Court |
| Cynthia J. Robinson-Hurdle, *Appellee-Petitioner* | The Honorable David J. Dreyer, Judge |
| | The Honorable H. Patrick Murphy, Magistrate |
| | Trial Court Cause No. 49D10-0308-DR-1487 |

**Vaidik, Chief Judge.**

# Case Summary

[1] Howard Robinson ("Father") appeals the trial court's grant of the petition for contempt and payment of extraordinary expenses filed by Cynthia Robinson-Hurdle ("Mother"). Finding no error, we affirm.

# Facts and Procedural History

[2] Father and Mother married each other in 1986 and later had three children together: I.R., born in 1994; O.R., born in 1996; and N.R., born in 1999. They divorced in 2004, and they agreed that Mother would have primary custody of the children and that Father would pay child support.

[3] In 2010, Father and Mother reached the following agreement regarding the children's future college expenses:

> [T]he parties agree to contribute to their children's post-secondary college expenses, including tuition, room and board, fees, and books, as follows: The child shall be responsible for no less than one-third (1/3) of his/her college expenses through scholarships, grants, student loans, or cash. Each parent shall be responsible for one-third (1/3) of the remaining balance after the child's contribution. The Bursar's Statements shall be utilized to determine the amounts owed. Post-secondary expenses shall be limited to the current college expenses to attend Indiana University. The obligation to pay post-secondary expenses shall be limited to an undergraduate degree and the child must maintain a 2.0 GPA (based on a 4.0 scale) each semester and shall maintain full-time status.

Appellant's App. Vol. II p. 96.

[4] In August 2016, Father filed a Motion for Modification/Emancipation regarding O.R., who by then was almost twenty years old. Father explained that O.R. was living with him in Tennessee, attending college, and seeking employment, and he asserted that "the existing custody and child support orders are unreasonable and should be modified" and that "[i]t is in the best interests of the parties' child that a modification take place to reflect the current circumstances with [O.R.] being emancipated." *Id*. at 148. The trial court set Father's motion for a hearing on December 29, 2016.

[5] On November 29, 2016, Mother filed a combined "Petition for Contempt Citation; Petition for Extraordinary Expenses and Response to Father's Petition for Modification/Emancipation." *Id*. at 160. Mother alleged that Father had failed to pay his full share of college expenses for I.R. (who had graduated from Notre Dame in May 2016) and asked the trial court to find him in contempt. She also claimed that N.R. was "involved in volleyball" and asked that Father be ordered to pay a share of the "extraordinary expenses" (noting that N.R. was "expected to receive an athletic scholarship to play volleyball in college"). *Id*. at 161. At Mother's request, the trial court ordered that Mother's petition would be heard at the same time as Father's motion on December 29.

[6] Ten days before the hearing, on December 19, the parties filed an "Agreed Entry" that provided as follows:

> 1. That [O.R.], born [in 1996], should be deemed emancipated for all purposes.

2.    That neither parent owes any child support and/or any other financial obligation whatsoever to the other regarding [O.R.]. All child support and financial obligations are current and paid in full.

3.    This matter concludes all pending matters between the parties and if the Court has set the matter for hearing on the Motion for Modification/Emancipation filed on August 29, 2016, that said hearing date should be vacated as moot.

* * * *

WHEREFORE, the parties respectfully enter into this Agreed Entry, request the Court to approve same, and request the Court to vacate any hearing on the Motion for Modification/Emancipation filed August 29, 2016, and for all other just and proper relief in the premises.

*Id*. at 164-65. The parties attached a modified child support worksheet to the Agreed Entry, reducing Father's child-support obligation (for N.R. only) from $229 to $161 per week. The same day those documents were filed, Father's attorney notified Father that he was "winding [his] practice down" and would be filing a motion to withdraw from his representation of Father. *Id*. at 176.

[7]    The trial court approved the Agreed Entry and vacated the December 29 hearing, both as to Father's motion and Mother's petition for contempt and payment of volleyball expenses. On December 28, Mother filed a "Request to Reset Hearing" regarding her petition. Mother asserted that the Agreed Entry was meant to resolve Father's motion relating to O.R. but not her petition relating to I.R. and N.R., that "the parties have not reached an agreement" on

her petition, and that the hearing should not have been vacated insofar as it related to her petition. *Id.* at 167-68. The trial court granted Mother's request and eventually set her petition for hearing on April 13, 2017. There is no indication in the record that Father ever opposed Mother's request or asked the trial court to reconsider its decision to reset the hearing.

[8] On March 15, 2017, Father's attorney e-mailed Father to remind him that he was winding down his practice and would be filing a motion to withdraw, adding that he would not be handling the hearing and that Father should "take steps immediately to engage new counsel[.]" *Id.* at 178. The motion to withdraw was filed on March 27, and the trial court granted it the next day.

[9] At the hearing on April 13, Father appeared without an attorney. Mother presented her evidence first, including evidence that Father was behind $6171.22 for his share of I.R.'s college expenses and $2390.52 for his share of O.R.'s Spring 2017 expenses. She requested that Father be found in contempt and ordered to pay the past-due amounts and $562.50 of her attorney's fees.[1] Mother also testified that N.R.'s club-volleyball expenses for November 29, 2016 (when Mother filed her petition) through the summer of 2017 were $13,262, that N.R. was a very highly ranked high-school volleyball player, and that her participation in club volleyball had helped her earn a full scholarship to

---

[1] Mother did not claim contempt as to O.R.'s college expenses until the hearing. Her written contempt petition mentioned only I.R.'s college expenses. However, Father did not object on this ground at the hearing, and he does not raise the issue on appeal.

Northwestern University (starting in the fall of 2017). She asked that Father be required to pay $5835 of the expenses (44%, in line with the disparity in the parties' incomes). When asked why she thought Father should pay a portion of N.R.'s volleyball expenses, Mother explained:

> Because of her extracurricular expenses and her Club----
> participating in club volleyball she has received a full scholarship
> to Northwestern University and since we both are going to
> benefit from that full ride scholarship, which is a direct---directly
> resulted from the expenses that I incurred paying for these
> extracurricular---this extracurricular activity we both should
> participate in the expenses since we are both going to reap the
> benefit.

Tr. p. 13. After cross-examining Mother, Father took the stand himself and began testifying. When he said, near the end of the hearing, that his attorney "put in a motion to withdraw because he was retiring and he asked me to find another lawyer in two weeks," the court acknowledged that "it's hard to represent yourself" but pointed out that Father had actually been notified of his attorney's intent to withdraw almost four months before the hearing, not two weeks. *Id.* at 39-40. Nonetheless, Father asked the court to continue the hearing, explaining that there was "no way I can keep up with what's going on right now by myself" and that "I'm going to have to get an attorney." *Id.* at 40. The court denied Father's request and adjourned the hearing.

[10] After the hearing, the trial court issued a written order granting Mother's petition for contempt and payment of volleyball expenses. Regarding contempt, the court ordered Father to pay $6172.22 for I.R.'s college expenses,

$2390.52 for O.R.'s Spring 2017 expenses, and $562.50 of Mother's attorney's fees. As for volleyball expenses, the court ordered Father to pay the $5835 sought by Mother. Father then retained a new attorney and filed a motion to correct error that relied largely on documents that had not been admitted into evidence at the hearing on Mother's petition and that included a variety of arguments that Father did not make (but could have made) at the hearing. The trial court summarily denied Father's motion.

Father now appeals.

# Discussion and Decision

Father raises three issues on appeal. His primary argument is that the Agreed Entry in December 2016 resolved Mother's petition for contempt and payment of volleyball expenses and that the trial court therefore erred when it granted Mother's Request to Reset Hearing on the petition. In the alternative, he contends that the trial court should have granted his request to continue the hearing to allow him additional time to prepare. Last, he argues that even if the trial court properly held the hearing and declined to continue the hearing, it erred by ruling in favor of Mother on the merits of her petition.

# I. Scope of the Agreed Entry

Father first challenges the trial court's grant of Mother's Request to Reset Hearing on her petition for contempt and payment of volleyball expenses, arguing that the December 2016 Agreed Entry disposed of that petition and

that, "[a]ccordingly, res judicata barred re-litigation" of the petition. Appellant's Br. p. 21. Setting aside the fact that Father did not argue res judicata at any time before or during the hearing on Mother's petition, we cannot agree with Father's starting premise that the Agreed Entry disposed of the petition.

[14] Father emphasizes the second sentence of paragraph 2: "All child support and financial obligations are current and paid in full." He also relies on the first part of paragraph 3: "This matter concludes all pending matters between the parties . . . ." Read in isolation, these passages would certainly seem to support Father's argument that Mother's petition—which was "pending" and which addressed certain "financial obligations"—was resolved by virtue of the Agreed Entry. But when the Agreed Entry is read as a whole and in context, it is quite apparent that it resolved only Father's Motion for Modification/Emancipation, which in turn concerned only O.R.

[15] Paragraph 1 of the Agreed Entry simply says that "**[O.R.]** . . . should be deemed emancipated for all purposes." (Emphasis added). Paragraph 2, before stating that "[a]ll child support and financial obligations are current and paid in full," says, "That neither parent owes any child support and/or any other financial obligation whatsoever to the other **regarding [O.R.]**." (Emphasis added). Paragraph 3, after stating that "[t]his matter concludes all pending matters between the parties," says, "and if the Court has set the matter for hearing **on the Motion for Modification/Emancipation filed on August 29, 2016**, that said hearing date should be vacated as moot." (Emphasis added).

Finally, the prayer for relief states that "the parties respectfully enter into this Agreed Entry, request the Court to approve same, and request the Court to vacate any hearing **on the Motion for Modification/Emancipation filed August 29, 2016**, and for all other just and proper relief." (Emphasis added). The Agreed Entry's specific references to Father's Motion for Modification/Emancipation and to O.R. (the only child mentioned in Father's motion) make it abundantly clear that the parties did not intend for the filing to dispose of Mother's November 2016 petition for contempt and payment of volleyball expenses, which is not mentioned in the Agreed Entry. Therefore, the trial court did not err by holding a hearing on, and then ruling on, Mother's petition.

## II. Denial of Father's request for a continuance

[16]     Father also contends that even if the Agreed Entry did not dispose of Mother's petition, the trial court should have granted his request to continue the hearing to give him additional time to prepare. We afford our trial courts discretion in deciding whether to grant a continuance, and we review such a decision only for an abuse of that discretion. *Blackford v. Boone Cty. Area Plan Comm'n*, 43 N.E.3d 655, 664 (Ind. Ct. App. 2015). When a motion to continue has been denied, an abuse of discretion will be found if the moving party has demonstrated good cause for granting the motion, but we will reverse the trial court's decision only if the moving party can show that he was prejudiced by the denial. *Id*.

[17] Father argues that he needed a continuance because (1) his attorney withdrew two weeks before the hearing, (2) he "did not have an opportunity to review any of Mother's extensive exhibits prior to her offer of such evidence," (3) he had "insufficient time to present his defense," and (4) his attorney did not tell him that the contempt issues would be addressed at the hearing "so he was unprepared to litigate those issues." Appellant's Br. pp. 45-49. We are not convinced. First, while it is true that Father's attorney did not formally move to withdraw until about two weeks before the hearing, it is also true that he informed Father of his intent to withdraw nearly four months before the hearing and that he told Father almost a full month before the hearing that he would not be handling the hearing and that Father should "take steps immediately to engage new counsel[.]" With regard to Mother's exhibits, even if we accept as true Father's claim that he did not receive any of the exhibits before the hearing (Mother suggested otherwise, *see* Tr. pp. 18-19), Father makes no argument as to how he was prejudiced by not having them earlier, i.e., what he might have done differently if he had seen the exhibits sooner. As for whether Father was given enough time to present his case, he contends that the trial court "cut[] short" his presentation of evidence, Appellant's Br. p. 45, but he does not develop the argument any further. And to the extent that Father's attorney incorrectly told him, as Father claims, that the only issue at the hearing would be N.R.'s volleyball expenses, that is a matter for Father to take up with the attorney. Given the fact that Mother's Request to Reset Hearing made multiple references to her contempt claim, the trial court's grant of that request left no doubt that the claim would be addressed at the hearing.

# III. Ruling on the merits of Mother's petition

[18] Finally, Father contends that even if the trial court properly agreed to consider Mother's petition, and even if the trial court properly denied Father's request for a continuance, it erred by ruling in favor of Mother on the merits of her petition.

## A. Contempt

[19] Father argues that the trial court should not have found him in contempt with regard to I.R.'s and O.R.'s college expenses. Generally, the determination of whether a party is in contempt is a matter within the trial court's discretion, and we will reverse only if we find that the trial court has abused that discretion. *Van Wieren v. Van Wieren*, 858 N.E.2d 216, 222-23 (Ind. Ct. App. 2006). "When reviewing a contempt order, we will neither reweigh the evidence nor judge the credibility of witnesses." *Id*. at 223.

[20] Father's argument regarding I.R. is based solely on the statement in the December 2016 Agreed Entry that "[a]ll child support and financial obligations are current and paid in full." As discussed above, however, that Agreed Entry concerned only O.R. Therefore, the Agreed Entry did not foreclose a finding that Father was in contempt as to I.R.'s college expenses.

[21] Father next contends that even if the Agreed Entry did not resolve the issue of I.R.'s college expenses, he "owed no postsecondary educational expenses" for O.R. for 2017 because the Agreed Entry established that O.R. was "emancipated for all purposes." Appellant's Br. pp. 51-52. He acknowledges

that, under Indiana's child-support statutes, the emancipation of a child terminates only an order to pay basic child support, not an order to pay education expenses (where, as here, such an order exists), *see* Ind. Code §§ 31-16-6-6, -7, but he argues that the "only reasonable interpretation" of the phrase "emancipated for all purposes" is that it terminated the parties' obligation to pay college expenses for O.R. Appellant's Br. p. 31. He bases his argument on the fact that emancipation for purposes of the basic child-support obligation generally occurs at age nineteen. *See* I.C. § 31-16-6-6. O.R.—the argument goes—was already nineteen (nearly twenty) when the parties filed their Agreed Entry, and therefore already emancipated for purposes of basic child support, so the phrase "emancipated for all purposes" would be meaningless if read to mean only "emancipated for purposes of basic child support." In order for the phrase to have any effect, Father contends, it must be read as cutting off the parties' obligation to contribute to O.R.'s college expenses.

[22] For three reasons, we cannot agree with Father's argument. First, because Indiana Code section 31-16-6-6 specifically provides that a parent can be required to pay a child's college expenses even after the child is "emancipated," it would be unnatural to read the word "emancipated" as terminating an obligation to pay college expenses, even when the phrase "for all purposes" is added. Second, the point of the Agreed Entry was to resolve Father's Motion for Modification/Emancipation, and that motion did not say a word about O.R.'s future college expenses. And third, when Mother testified about Father's failure to pay a share of O.R.'s Spring 2017 expenses, Father did not

complain that the Agreed Entry relieved him of that obligation. All of this strongly supports the conclusion that Father's intent in filing his motion, and the parties' intent in filing the Agreed Entry, was simply to obtain a reduction in Father's basic child-support obligation based on O.R.'s emancipation. While O.R.'s emancipation occurred automatically when he turned nineteen, the reduction of Father's child-support payment did not, which is why Father filed his motion and asked the court to recognize the emancipation. In short, reading the phrase "emancipated for all purposes" as addressing only Father's basic child-support obligation does not render the phrase meaningless; to the contrary, O.R. being emancipated provided the requisite factual basis for the modification of that support obligation from $229 to $161 per week.

[23] Father also asserts that even if the Agreed Entry did not address O.R.'s college expenses, O.R. failed to maintain "full-time status and/or a 2.0 grade point average" and therefore was no longer entitled to assistance with those expenses under the parties' agreement. Appellant's Br. p. 52; *see also* Appellant's App. Vol. II p. 96 ("The obligation to pay post-secondary expenses shall be limited to an undergraduate degree and the child must maintain a 2.0 GPA (based on a 4.0 scale) each semester and shall maintain full-time status."). He points to his testimony that O.R. "failed out of Jackson College" (in Michigan, according to Father) before moving to Tennessee and to evidence that O.R. was a part-time student in 2016. Tr. pp. 11-12, 37. Mother, however, presented evidence that O.R.'s cumulative GPA was 2.3, *see id.* at 9, 12; Pet. Ex. 8, and Father said nothing when Mother's attorney told the court that O.R. was a full-time student

in the spring of 2017, *see* Tr. p. 41. Therefore, the trial court did not err in concluding that the parties' agreement regarding college expenses was still applicable to O.R.

[24] As an alternative, Father argues that "[e]ven if the trial court properly ordered Father to pay the allegedly outstanding postsecondary educational expenses for [I.R.] and [O.R.], the trial court abused its discretion by failing to credit Father with his overpayments of child support." Appellant's Br. p. 53. However, the argument Father makes on appeal does not appear anywhere in the record of the hearing before the trial court, at least not in a manner that we can decipher. To the extent Father raised his argument in the trial court, he did not do so until his motion to correct error. *See* Appellant's App. Vol. III pp. 12-78. That was too late. "It is well established that a party may not raise issues for the first time in a motion to correct error." *Shepherd Props. Co. v. Int'l Union of Painters and Allied Trades, Dist. Council 91*, 972 N.E.2d 845, 849 n.3 (Ind. 2012).

[25] Father also asserts that the trial court should not have ordered him to pay $562.50 of Mother's attorney's fees based on the contempt. However, Father's argument on this point is based largely on his belief that Mother's petition was without merit. *See* Appellant's Br. pp. 54-55. Because we have already held otherwise, we affirm the trial court's modest award of attorney's fees to Mother.

## B. Volleyball Expenses

[26] Father also challenges the part of the trial court's order requiring him to contribute to N.R.'s club-volleyball expenses. Our trial courts enjoy discretion

in deciding whether to order the payment of extraordinary expenses, and we review such a decision only for an abuse of that discretion. *In re Paternity of C.H.W.*, 892 N.E.2d 166, 171 (Ind. Ct. App. 2008), *trans. denied*.

[27] Initially, we note that much of Father's argument is based on the premise that he might be required to pay additional expenses on top of the $5835 he was already ordered to pay. The premise is faulty. While Father is correct that the wording of this part of the trial court's order is open-ended and leaves open the possibility of additional expenses, Mother made clear at the hearing that the $13,262 in expenses at issue covered all club-volleyball activities through the summer of 2017, at which point N.R. would join the Northwestern volleyball team and would no longer incur club-volleyball expenses. *See* Tr. p. 14. In her brief on appeal, Mother confirms that she was not, and is not, asking for Father to pay for any activities after the summer of 2017. Appellee's Br. p. 21. Therefore, though it is true that the trial court's order regarding N.R.'s volleyball expenses is not explicitly limited to expenses through the summer of 2017, we fail to see how amending the order to that effect would be of any benefit to Father at this point, and we do not grant meaningless relief. *See* Ind. Appellate Rule 66(A).

[28] Father also argues that the order regarding volleyball expenses "violates [Indiana] Child Support Guideline 8." Appellant's Br. p. 36. That provision addresses "Other Extraordinary Expenses" as follows:

> The economic data used in developing the Child Support Guideline Schedules do not include components related to those

expenses of an "optional" nature such as costs related to summer camp, soccer leagues, scouting and the like. When both parents agree that the child(ren) may participate in optional activities, the parents should pay their pro rata share of these expenses. In the absence of an agreement relating to such expenses, assigning responsibility for the costs should take into account factors such as each parent's ability to pay, which parent is encouraging the activity, whether the child(ren) has/have historically participated in the activity, and the reasons a parent encourages or opposes participation in the activity. If the parents or the court determine that the child(ren) may participate in optional activities, the method of sharing the expenses shall be set forth in the entry.

Specifically, Father asserts that there is no evidence that he "agreed to or supported" N.R.'s participation in club volleyball. Appellant's Br. p. 37. But Guideline 8 does not say that a parent must agree to an activity before being ordered to pay a share of the cost of the activity. To be sure, the guideline envisions agreements between parents regarding optional activities. However, it also explicitly grants courts authority to order parents to pay for such activities even "[i]n the absence of" such an agreement. Therefore, the trial court's order in this case does not violate Guideline 8.

[29] In addition, Father contends that $13,262 is an unreasonable amount of expenses to incur for one child for one activity for around half a year, at least in light of the parties' respective incomes and their other financial obligations. If we were to consider that figure in isolation, we might agree with Father. However, we must consider it in the context of N.R.'s full-ride scholarship to Northwestern. That scholarship, which N.R. obviously would not have received but for her volleyball activities and accomplishments during high

school, relieves Father of his obligation to pay up to 1/3 of the cost of attending Indiana University. Even one year of that obligation could easily exceed the $5835 Father was ordered to pay for N.R.'s club-volleyball activities.[2] Father emphasizes the fact that some of the expenses were for activities subsequent to N.R. being awarded the scholarship in February 2017. Apparently Father would have had N.R. simply quit her club-volleyball team, midseason, after securing the scholarship. Suffice it to say, we believe the trial court acted well within its discretion in allowing N.R. to finish the season.

[30] The remainder of Father's argument on this point consists of a variety of picayunish and largely meritless attacks on particular expenses included in the $13,262. He notes that Mother incurred a $500 charge on November 11, 2016, more than two weeks before she filed her petition, but he does not question Mother's testimony that all the expenses she was presenting were for activities that took place **after** she filed her petition (in other words, there is no dispute that the $500 charge was simply a prepayment for a post-petition activity). He also claims that Mother included $343 for an Orlando car rental for June 21-July 2, 2017 (eleven days), even though the volleyball event ran only June 21-27 (seven days). That is incorrect. She included only $218 (approximately seven-elevenths of $343). *See* Pet. Ex. 5, p. 1. He complains about paying a portion of the coaches' travel expenses and part of Mother's fuel costs for driving N.R.

---

[2] Father says that he "is responsible for his share of [N.R.'s] postsecondary educational expenses not covered by her athletic scholarship," Appellant's Br. p. 40, but he doesn't identify any such expenses.

to out-of-town practices, but he cites nothing in the record and no authority suggesting that these are unreasonable expenses for club-sport participation. In addition, he takes issue with the fact that some of the hotel bills include charges for various food and drink, some of which may have been consumed by Mother (a total of $76.28, to be exact), and that Mother "sought reimbursement at the IRS 2017 Standard Mileage Rate" when calculating the cost of driving to certain other volleyball activities "rather than just her out-of-pocket fuel costs." Appellant's Br. pp. 43-44. We will not take a deep dive into these issues; at most these were close calls on relatively minor details—the sort of calls better left to the discretion of the trial court.

[31] Affirmed.

May, J, and Altice, J., concur.